**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

---

IONUT PEDRO DUMITRU,

      Petitioner,

v.                                                                     Case No. 1:26-cv-00800-MLG-SCY

GEORGE DEDOS, Warden, Cibola County
Correctional Center, MARISA FLORES,
Acting Director, El Paso Field Office, U.S.
Immigration & Customs Enforcement,
Enforcement & Removal Operations, TODD
M. LYONS, Acting Director, U.S.
Immigration & Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department
of Homeland Security, PAMELA BONDI,
U.S. Attorney General, DAREN K.
MARGOLIN, Director, Executive Office of
Immigration Review,

      Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER**

Petitioner Ionut Pedro Dumitru—a citizen of Romania—is currently detained at the Cibola

County Correctional Center in New Mexico. Doc. 1 at ¶ 12. The Department of Homeland Security

encountered him as a minor child in the United States with his mother in December 2015. *Id*. DHS

initially detained Dumitru, but he was eventually released on his own recognizance and in

accordance with 8 U.S.C. § 1226(a). *Id*. at ¶ 36. Dumitru "is the father of three U.S. citizen

children" and has started his own business. *See Id*. at ¶¶ 38-39. On January 15, 2026, while enroute

to buy milk, he was detained by immigration officials and taken to Cibola County Correctional

Center in New Mexico. *Id*. at ¶ 41. Dumitru alleges, and Respondents do not challenge, that he has

1

neither a history of violence nor criminal history that would suggest he presents a danger to the community. *Id*. at ¶ 40.

Dumitru challenges his continued detention and seeks a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition"). Doc. 1 at 1-2. Specifically, he contends that his "arrest was unlawful and his re-detention under 8 U.S.C. § 1226(b)(2)(A) violates the Immigration and Nationality Act" and that "Respondents have violated [his] rights under the Due Process Clause of the Fifth Amendment by subjecting him to punitive detention and because they failed to properly revoke his order of release, failed to follow any procedures, and failed to adhere to DHS regulations." Doc. 1 at ¶¶ 2-3. The Court ordered the United States Attorney's Office for the District of New Mexico ("USAO") to respond to Dumitru's Petition within ten business days. *See* Doc. 6 at 2.

In its response, Respondents assert that Dumitru's detention accords with § 1225(b)(2)(A) and is mandatory. Doc. 9 at 2. They admit, however, that this Court's prior decisions on this issue are controlling, and that "the facts are not materially distinguishable for purposes of the Court's decision on the legal issues of which statutory provision authorizes Petitioner's detention." *Id*. Additionally, the Government appears to admit that Dumitru did not receive a pre-deprivation hearing, despite having been previously released on his own recognizance in accordance with § 1226(a). Doc. 9 at 3; *see* Doc. 1 at ¶ 36.

Given these uncontested facts, the Court finds that Dumitru was therefore released pursuant to § 1226(a)(2) and an immigration officer made an initial determination that Dumitru was neither a danger to the community nor a flight risk. *See* 8 C.F.R. § 236.1(c)(8); Doc. 1-2 at 2. Because Dumitru was initially released from Respondents' custody pursuant to § 1226(a)(2), the Court hereby finds his re-detention without an immigration court's finding of dangerousness or risk of flight constitutes a violation of the Fifth Amendment's Due Process Clause. The analysis and

reasoning set forth in this Court's opinion in *Diallo* is adopted here. *Diallo v. Orozco*, Case No. 2:26-cv-00066, 2026 WL 608746, at *3-4 (D.N.M. Mar. 4, 2026) (employing the *Mathews v. Eldridge*[1] balancing test to hold that re-detention of a petitioner initially released on their own recognizance pursuant to § 1226(a)(2) without a pre-deprivation hearing or immigration court finding of a change in dangerousness or flight risk constitutes a due process violation); *see also Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025); *Danierov v. Noem*, No. 2:25-cv-01215-KG-KRS, 2025 WL 3653925, at *2 (D.N.M. Dec. 17, 2025); *Ramirez v. Noem*, No. 2:26-cv-00063-SMD-GJF, 2026 WL 381869, at *6-7 (D.N.M. Feb. 11, 2026); *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) (collecting cases from the Northern District of California), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025); *Destino v. FCI Berlin, Warden*, No. 1:25-cv-374-SE-AJ, 2025 WL 4010424, at *11 (D.N.H. Dec. 24, 2025), *appeal filed sub nom.*, *Destino v. Ackley*, No. 26-1181 (1st Cir. Feb. 20, 2026); *O.F.C. v. Almodovar*, No. 25-cv-9816 (LJL), 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026); *Singh v. Stevens*, No. 3:26-CV-133, 2026 WL 456489, at *7 (N.D. Ohio Feb. 18, 2026). Specifically, the Court concludes that due process demands that Dumitru receive a pre-deprivation hearing[2] because (1) he has a clear liberty interest in remaining out of custody; (2) the risk of erroneous deprivation under the procedures used here is high, and the probable value of additional procedural safeguards is considerable, given that Dumitru was re-detained despite the Government's failure to provide any valid legal basis to justify his civil detention; and (3) the United States' interest in detaining Dumitru is low because they have already released him on his own recognizance, and the cost of

---

[1] 424 U.S. 319, 335 (1976).

[2] The *Mathews v. Eldridge* balancing test guides this analysis. 424 U.S. 319, 335 (1976); *see Diallo*, 2026 WL 608746, at *3-4

a pre-deprivation hearing is minimal. *Diallo*, 2026 WL 608746, at \*3-4; *see Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [they] will be re-detained only if [they] violate[] the conditions of [their] release." (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025); *Matthews*, 424 U.S. at 335.

Because Dumitru did not receive a pre-deprivation hearing, his detention is an ongoing violation of his right to due process. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Accordingly, Dumitru must be immediately released.[3] *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release.").

It is hereby ordered:

---

[3] Absent any argument from the United States as to why a post-deprivation hearing would provide adequate process in this case, the Court is unable to conclude that a post-deprivation bond hearing, rather than immediate release, is the proper remedy for the due process violation that occurred here. "Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified) (ordering a petitioner's release after concluding that a post-deprivation bond hearing would be "inadequate to address the denial of due process that [the petitioner] was entitled to in the first instance"); *see also Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at \*31 (E.D.N.Y. Nov. 28, 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.").

1. Respondents must immediately release (no later than twenty-four hours from this Order's filing) Dumitru from custody, subject to the conditions of his conditional parole.

2. Upon his release, Respondents must return all his property, including any identification documentation, that was in his possession when he was detained. Respondents must also promptly inform Dumitru's counsel of when and where he will be released.

3. Respondents must file a status report within three business days of this Order's filing to certify their compliance. The status report shall state when and where Dumitru was released.

4. Unless Respondents detain Dumitru to effectuate an administratively final removal order, *see* 8 U.S.C. § 1231(a), they may not re-detain him without conducting a pre-deprivation hearing before a neutral immigration judge during which Respondents must show by clear and convincing evidence that Dumitru is a flight risk or a danger to the community, and that no conditions other than his detention would be sufficient to alleviate such concerns.[4] Respondents must notify Dumitru seven days in advance of any such hearing.

5. Dumitru shall promptly report to the Court any failure on Respondents' part to comply with this Order.

It is so ordered.

---

[4] *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1240-46 (D.N.M. 2025) (concluding that, where the petitioner had "been unlawfully detained without due process in violation of his constitutional rights[,]" the appropriate remedy was "shifting the burden to the Government to prove, by clear and convincing evidence, that [the p]etitioner is at risk of flight and/or a danger to the community such that continued detention is necessary").

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA